IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

THERON KENNETH HOLSTON,

                Petitioner,

                vs.

MATTHEW CATE, Secretary, California
Department of Corrections and
Rehabilitation,

                Respondent.

No. 2:11-cv-00917-JKS

MEMORANDUM DECISION
and
ORDER
[Re:  Motions at Docket Nos. 31 and 33]

Theron Kenneth Holston, a state prisoner appearing *pro se*, filed a Petition for a Writ of

Habeas Corpus under 28 U.S.C. § 2254.  Holston is currently in the custody of the California

Department of Corrections and Rehabilitation, on parole.  Respondent has answered, and Holston

has replied.  At Docket No. 31 Holston has requested the appointment of counsel, and at Docket

No. 33 a request for immediate release on his own recognizance.

## I.  BACKGROUND/PRIOR PROCEEDINGS

Holston was charged in an information of second-degree burglary (Penal Code § 211) and

misdemeanor assault (Penal Code § 245).[1]  In addition as to the second-degree burglary charge,

the information alleged that Holston had served four prior prison terms (Penal Code § 667.5(b)),

including possession of a controlled substance (Cal. Health & Safety Code § 11377), possession

of an incendiary device (Penal Code § 453(b)), obstructing an executive officer (Penal Code

§ 69), and indecent exposure (Penal Code § 314.1).  On December 1, 2009,  Holston entered into

a negotiated plea agreement whereby he pleaded no contest to a substituted petty theft charge

---

[1] All references to the Penal Code are to the California Penal Code.

with a prior (Pen. Code § 666) on the burglary count, admitted a prior theft-related conviction, and admitted two prison priors, possession of an incendiary device (Penal Code § 453(b)) and obstructing an executive officer (Penal Code § 69).  The misdemeanor assault charge and the other two priors were dismissed.  The same day, the Yuba County Superior Court sentenced Holston in accordance with the negotiated plea agreement to the stipulated sentence of five years in prison.  The trial court awarded Holston 205 days of custody credits, including 137 actual days and sixty-eight days of conduct credits.  The California Court of Appeal, Third Appellate District, affirmed Holston's conviction and sentence in an unpublished decision.[2]  The California Supreme Court summarily denied review on November 10, 2010, and the Supreme Court denied *certiorari* on October 3, 2011.[3]  Holston timely filed his Petition for relief in this Court on February 14, 2011, and his Amended Petition with leave of court on November 30, 2011.

While his appeal was pending Holston, appearing *pro se*, initiated as series of petitions for habeas relief in the state courts.

First Round:   A petition in the Sacramento County Superior Court (RIC10012462), which was denied on July 2, 2010; on July 28, 2010, a petition in the Court of Appeal (C065674), which was summarily denied without opinion or citation to authority on August 5, 2010; and on September 14, 2010, a petition in the California Supreme Court (S186564), which was also summarily denied on May 11, 2011.

Second Round:  On November 24, 2010, a petition in the Sacramento County Superior Court (HC RR 10-0000029), which was denied on February 8, 2011.  On February 8, 2011, a

---

[2] *People v. Holston*, No. C063836, 2010 WL 3096157 (Cal. Ct. App. 2010).

[3] *Holston v. California*, 132 S. Ct. 238 (2011) (Mem.).

petition in the California Court of Appeal (9C067491), which was summarily denied March 3, 2011, and on March 14, 2011, in the California Supreme Court (S191373), which was denied on May 11, 2011, citing *In re Miller* (1941) 17 Cal.2d 734, 735 [112 P.2d 10].

Third Round:  On April 21, 2011, a petition for habeas relief in the California Court of Appeal (C067963), which was summarily denied without opinion or citation to authority, and the California Supreme Court denied review on June 29, 2011 (S192935).

Fourth Round :  On November 14, 2011, a petition in the California Court of Appeal (C069688), which was summarily denied on June 25, 2012.[4]

The facts underlying his plea are well known to the parties and are not relevant to the issues raised. Consequently, they are not repeated here.

## II.  GROUNDS RAISED/DEFENSES

In his Amended Petition Holston raises four grounds:  (1) ineffective assistance of appellate counsel; (2) application of Penal Code § 666(b) violated the *Ex Post Facto* Clause; (3) the finding that Holston was an offender as defined in Penal Code § 666(b), i.e., a registered sex offender, was not properly pleaded or proven; and (4) the trial court's finding that he was an offender as defined in Penal Code § 666(b) was based upon insufficient evidence.  Respondent does not assert any affirmative defenses.

In his Petition, Holston requests a veritable cornucopia of relief, including:  (1) that his good conduct credits be increased to a total of 273 days; (2) that the sentence be vacated and

---

[4] The record before this Court does not reflect that Holston has pursued this matter in the California Supreme Court, and a check of the Appellate Courts Case Information online does not show any further action (http://appellatecases.courtinfo.ca.gov/ (last checked November 28, 2012)).  The issues raised in that petition are not relevant to the issues before this Court.

amended to provide for six months in the county jail; (3) that the count to which he entered his guilty plea be amended to be a misdemeanor under Penal Code § 484, 488 (petty theft), and the remaining two prison term allegations be stricken; (4) that the fines and restitution awards be waived; and (5) that his immediate release be ordered.

### III.  STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" at the time the state court renders its decision or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[5]  The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the relevant state-court decision."[6]  The holding must also be intended to be binding upon the states; that is, the decision must be based upon constitutional grounds, not on the supervisory power of the Supreme Court over federal courts.[7]  Thus, where holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'"[8]  When a claim falls under the

---

[5] 28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 402-06 (2000); *see also Lockyer v. Andrade*, 538 U.S. 63, 70-75 (2003) (explaining this standard).

[6] *Williams*, 529 U.S. at 412 (alteration added).

[7] *Early v. Packer*, 537 U.S. 3, 10 (2002).

[8] *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (alterations in original) (citation omitted); *see also Wright v. Van Patten*, 552 U.S. 120, 126 (2008) (per curiam); *Kessee v. Mendoza-*
(continued...)

"unreasonable application" prong, a state court's application of Supreme Court precedent must be "objectively unreasonable," not just "incorrect or erroneous."[9]  The Supreme Court has made clear that the objectively unreasonable standard is "a substantially higher threshold" than simply believing that the state-court determination was incorrect.[10]  "[A]bsent a specific constitutional violation, federal habeas corpus review of trial error is limited to whether the error 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"[11]  In a federal habeas proceeding, the standard under which this Court must assess the prejudicial impact of constitutional error in a state court criminal trial is whether the error had a substantial and injurious effect or influence in determining the outcome.[12]  Because state court judgments of conviction and sentence carry a presumption of finality and legality, the petitioner has the burden of showing by a preponderance of the evidence that he or she merits habeas relief.[13]

The Supreme Court recently underscored the magnitude of the deference required:

---

[8](...continued)
*Powers*, 574 F.3d 675, 678-79 (9th Cir. 2009); *Moses v. Payne*, 555 F.3d 742, 753-54 (9th Cir. 2009) (explaining the difference between principles enunciated by the Supreme Court that are directly applicable to the case and principles that must be modified in order to be applied to the case; the former are clearly established precedent for purposes of § 2254(d)(1), the latter are not).

[9] *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003) (internal quotation marks and citations omitted).

[10] *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (citing *Williams,* 529 U.S. at 410).

[11] *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 642, 643 (1974)).

[12] *Fry v. Pliler*, 551 U.S. 112, 121 (2007) (adopting the standard set forth in *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993)).

[13] *Silva v. Woodford*, 279 F.3d 825, 835 (9th Cir. 2002) (citations omitted); *see Wood v. Bartholomew*, 516 U.S. 1, 8 (1995) (per curiam) (stating that a federal court cannot grant "habeas relief on the basis of little more than speculation with slight support").

As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. *Cf. Felker v. Turpin*, 518 U.S. 651, 664, 116 S.Ct. 2333, 135 L.Ed.2d 827 (1996) (discussing AEDPA's "modified res judicata rule" under § 2244). *It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no farther.* Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal. *Jackson v. Virginia*, 443 U.S. 307, 332, n.5, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (Stevens, J., concurring in judgment). As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.[14]

In applying this standard, this Court reviews the "last reasoned decision" by the state court.[15] State appellate court decisions that summarily affirm a lower court's opinion without explanation are presumed to have adopted the reasoning of the lower court.[16] This Court gives the presumed decision of the state court the same AEDPA deference that it would give a reasoned decision of the state court.[17]

---

[14] *Harrington v. Richter*, 131 S. Ct. 770, 786-87 (2011) (emphasis added).

[15] *Robinson v. Ignacio*, 360 F.3d 1044, 1055 (9th Cir. 2004) (citing *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002)); *cf. Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991) (explaining "how federal courts in habeas proceedings are to determine whether an unexplained order . . . rests primarily on federal law," and noting that federal courts must start by examining "the last reasoned opinion on the claim . . . .").

[16] *Ylst*, 501 U.S. at 802-03 ("Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground."); *cf. Richter*, 131 S. Ct. at 784 ("As every Court of Appeals to consider the issue has recognized, determining whether a states court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning.").

[17] *See Richter*, 131 S. Ct. at 784-85 (rejecting the argument that a summary disposition was not entitled to § 2254(d) deference).

Under California's unique habeas procedure, a prisoner who is denied habeas relief in the

superior court files a new original petition for relief in the court of appeal.  If denied relief by the

court of appeal, the defendant has the option of either filing a new original petition for habeas

relief or a petition for review of the court of appeal's denial in the California Supreme Court.[18]

This is considered as the functional equivalent of the appeal process.[19]  Under AEDPA, the state

court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption

by clear and convincing evidence.[20]  This presumption applies to state-trial courts and appellate

courts alike.[21]

A state court is not required to give reasons before its decision can be deemed to be

"adjudicated on the merits."[22]  When there is no reasoned state-court decision denying an issue

 presented to the state, "it may be presumed that the state court adjudicated the claim on the

merits in the absence of any indication or state-law procedural principles to the contrary."[23]

"The presumption may be overcome when there is reason to think some other explanation for the

---

[18] *See Carey v. Saffold*, 536 U.S. 214, 221-22 (2002) (citations omitted) (discussing California's "original writ" system).

[19] *See id.* at 222 ("Thus, typically a prisoner will seek habeas review in a lower court and later seek appellate review in a higher court . . . .").

[20] 28 U.S.C. § 2254(e)(1); *see also Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) ("Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary . . . ." (citing 28 U.S.C. § 2254(e)(1))).

[21] *See Stevenson v. Lewis*, 384 F.3d 1069, 1072 (9th Cir. 2004) ("Stevenson does not address these factual findings, let alone challenge them with clear and convincing evidence. Accordingly, we presume them to be correct." (citing 28 U.S.C. § 2254(e)(1); *Pollard v. Galaza*, 290 F.3d 1030, 1035 (9th Cir. 2002))).

[22] *Harrington v. Richter*, 131 S. Ct. 770, 784-85 (2011).

[23] *Id.* (citing *Harris v. Reed*, 489 U.S. 255, 265 (1989)).

state court's decision is more likely."[24]   Where the presumption applies, this Court must perform

an independent review of the record to ascertain whether the state-court decision was

"objectively unreasonable."[25]   In conducting an independent review of the record, this Court

presumes that the relevant state-court decision rested on federal grounds,[26] giving that presumed

decision the same deference as a reasoned decision.[27]   The scope of this review is for clear error

of the state court ruling on the petition:

> [A]lthough we cannot undertake our review by analyzing the basis for the state
> court's decision, we can view it through the "objectively reasonable" lens ground by
> *Williams*. . . . Federal habeas review is not *de novo* when the state court does not
> supply reasoning for its decision, but an independent review of the record is required
> to determine whether the state court clearly erred in its application of controlling
> federal law.  Only by that examination may we determine whether the state court's
> decision was objectively reasonable.[28]

---

[24] *Id.* at 785 (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991)).

[25] *Reynoso v. Giurbino*, 462 F.3d 1099, 1109 (9th Cir. 2006) (quoting *Pham v. Terhune*, 400 F.3d 740, 742 (9th Cir. 2005) (per curiam)).

[26] *See Coleman v. Thompson*, 501 U.S. 722, 740 (1991) ("The presumption at present applies only when it fairly appears that a state court judgment rested primarily on federal law or was interwoven with federal law, that is, in those cases where a federal court has good reason to question whether there is an independent and adequate state ground for the decision."); *see also Harris*, 489 U.S. at 263.

[27] *Richter*, 131 S. Ct. at 784-85 (rejecting the argument that a summary disposition was not entitled to § 2254(d) deference).

[28] *Delgado v. Lewis* (*Delgado II*), 223 F.3d 976, 982 (9th Cir. 2000) (citation omitted). *But cf. Lewis v. Mayle*, 391 F.3d 989, 996 (9th Cir. 2004) ("Our standard of review is not controlled by *Delgado v. Lewis* . . . There, we held that where a state court provides no rationale for a decision, a habeas court does not apply de novo review, but instead determines whether the state decision was objectively unreasonable based on its independent reading of the record.  Here, however, the state court was not silent as to its reasoning . . . .  Therefore, we review de novo whether Lewis waived his right to conflict free counsel . . . .").

"[A]lthough we independently review the record, we still defer to the state court's ultimate decision."[29]

## IV.  DISCUSSION

### A.    Appointment of Counsel [Docket No. 31]

There is no constitutional right to counsel in federal habeas proceedings.[30]  Appointment of counsel is not required in a habeas corpus proceeding in the absence of an order granting discovery or an evidentiary hearing.[31]  This Court may appoint counsel under the Criminal Justice Act in this case if the court determines that the interests of justice so require.[32]  This Court does not so determine.  Accordingly the Motion for Appointment of Counsel at Docket No. 31 is **DENIED**.

### B.    Release on Own Recognizance [Docket No. 33]

The record reflects that Holston has already been released, thereby rendering this question moot.  Accordingly, the Application for Release on Own Recognizance Pending Determination on Petition for Writ of Habeas Corpus at Docket No. 33 is **DENIED** as moot.

### C.    Merits

At the time of Holston's conviction, Penal Code § 666 read:

---

[29] *Pirtle v. Morgan*, 313 F.3d 1160, 1167 (9th Cir. 2002).

[30] *See Lawrence v. Florida*, 549 U.S. 327, 336-37 (2007) (citing *Coleman*, 501 U.S. at 756-57.

[31] *See* Rules—Section 2254 Cases, Rules 6(a), 8(c).

[32] 28 U.S.C. § 2254(h); 18 U.S.C. § 3006A(a)(2)(B); *see Weygandt v. Look*, 718 F.2d 952, 954 (9th Cir. 1983) ("In deciding whether to appoint counsel in a habeas proceeding, the district court must evaluate the likelihood of success on the merits as well as the ability of the petitioner to articulate his claims *pro se* in light of the complexity of the legal issues involved.").

9

Every person who, having been convicted of petty theft, grand theft, auto theft under Section 10851 of the Vehicle Code, burglary, carjacking, robbery, or a felony violation of Section 496 and having served a term therefor in any penal institution or having been imprisoned therein as a condition of probation for that offense, is subsequently convicted of petty theft, then the person convicted of that subsequent offense is punishable by imprisonment in the county jail not exceeding one year, or in the state prison.

Effective September 9, 2010, as relevant to the issues *sub judice*, § 666 was amended to read:

(a) Notwithstanding Section 490, every person who, having been convicted three or more times of petty theft, grand theft, auto theft under Section 10851 of the Vehicle Code, burglary, carjacking, robbery, or a felony violation of Section 496 and having served a term therefor in any penal institution or having been imprisoned therein as a condition of probation for that offense, is subsequently convicted of petty theft, then the person convicted of that subsequent offense is punishable by imprisonment in the county jail not exceeding one year, or in the state prison.

(b) Notwithstanding Section 490, any person described in paragraph (1) who, having been convicted of petty theft, grand theft, auto theft under Section 10851 of the Vehicle Code, burglary, carjacking, robbery, or a felony violation of Section 496, and having served a term of imprisonment therefor in any penal institution or having been imprisoned therein as a condition of probation for that offense, who is subsequently convicted of petty theft, is punishable by imprisonment in the county jail not exceeding one year, or in the state prison.

(1) This subdivision shall apply to any person who is required to register pursuant to the Sex Offender Registration Act, or who has a prior violent or serious felony conviction, as specified in subdivision (c) of Section 667.5 or subdivision (c) of Section 1192.7.

Holston's arguments are based upon a single premise—that the constitution requires that the amendment of California Penal Code § 666 *after* Holston entered his plea and sentence was imposed, apply to him.  The State courts unanimously held against Holston.

Despite his lengthy exhortations and linguistic gymnastics, Holston totally ignores the effect of the fact that he entered a plea of guilty to a reduced charge in exchange for the State agreeing to cap the prison term at five years, dismissing a second count and striking two priors that, if convicted and the priors found to be true, likely would have put him behind bars for the duration of his natural life under California's "three-strikes" law.  Holston effectively seeks to

overturn this plea.  Holston, however, faces a high hurdle in seeking to overturn a guilty plea on

collateral review.  As the Supreme Court held in *Mabry*:

> It is well settled that a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked.  It is also well settled that plea agreements are consistent with the requirements of voluntariness and intelligence because each side may obtain advantages when a guilty plea is exchanged for sentencing concessions, the agreement is no less voluntary than any other bargained-for exchange.  It is only when the consensual character of the plea is called into question that the validity of a guilty plea may be impaired.  *In Brady v. United States*, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970), we stated the applicable standard:
>
> [A] plea of guilty entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel, must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (e.g. bribes).[33]

Twenty years later the Supreme Court explained:

> [The Supreme Court] recently explained, in reversing a lower court determination that a guilty plea was not voluntary:  "[T]he law ordinarily considers a waiver knowing, intelligent, and sufficiently aware if the defendant fully understands the nature of the right and how it would likely apply *in general* in the circumstances—even though the defendant may not know the *specific detailed* consequences of invoking it."  *United States v. Ruiz*, 536 U.S. 622, 629, 122 S.Ct. 2450, 153 L.Ed.2d 586 (2002) (emphasis in original).  We similarly observed in *Patterson*:  "If [the defendant] . . . lacked a full and complete appreciation of all of the consequences flowing from his waiver, it does not defeat the State's showing that the information it provided to him satisfied the constitutional minimum."  487 U.S., at 294, 108 S.Ct. 2389 (internal quotation marks omitted).[34]

Holston makes no claim that his plea was not voluntarily entered, that he lacked any

understanding of the consequences of his plea, or that the State has breached the plea agreement.

---

[33] *Mabry v. Johnson*, 467 U.S. 504, 508-09 (1984) (internal quotation marks and citations omitted), *disapproved on other grounds in Puckett v. United States*, 556 U.S. 129, 138 n.1 (2009).

[34] *Iowa v. Tovar*, 541 U.S. 77, 92 (2004) (emphasis in the original).

The prevailing view is that the relief to be afforded in federal courts on invalid plea agreements is either specific enforcement of the agreement or, alternatively, to permit the defendant to withdraw the plea.[35]  Plea agreements are "constitutional contracts," the interpretation of the terms of which is controlled by the principles of contract law, construed in light of the rights and obligations created by the Constitution.[36]  Courts will generally enforce the plain language of the plea agreement if it is clear and unambiguous on its face, but will construe all ambiguities against the government.[37]

Holston does not seek to withdraw his plea, there is no claim that the plea agreement is ambiguous, nor does Holston seek to enforce its terms.  Quite to the contrary, Holston is requesting this Court to compel the Yuba County Superior Court to modify his plea over the objections of the State, not in accordance with any understanding or fact that existed at the time he entered his plea, but as a result of changes to the law *after* he entered his plea.  Reduced to its essence, what Holston is asking this Court to do is to further reduce the charge to which he pled guilty from a felony to misdemeanor, reduce the sentence that he accepted from five years imprisonment to six months in the county jail, and to compel the State to accept those terms over its objection.  Holston cites no authority for this novel proposition and independent research by this Court has not uncovered any such authority.  Indeed, that the law would countenance such an approach is counter-intuitive to the basic principles underlying a negotiated plea.  In short, the

---

[35] *See Pierre v. Thompson*, 666 F.2d 424, 427 (9th Cir. 1982) and the authorities cited therein.

[36] *See Ricketts v. Adamson*, 483 U.S. 1, 16 (1987); *United States v. Speelman*, 431 F.3d 1226, 1229 (9th Cir. 2005).

[37] *See Speelman*, 431 F.3d at 1229.

relief Holston seeks exceeds the jurisdictionof this Court in a federal habeas proceeding.

Moreover, even if this Court could reach Holston's arguments, he would not prevail.[38]

Ground 1:  Ineffective Assistance of Appellate Counsel

On direct appeal Holston contended he was entitled to additional pre-sentence credits

under an amendment to Penal Code § 4019 that became effective after he was sentenced.  The

Court of Appeal rejected that contention because Holston was a registered sex offender, a fact

that excluded him from the benefits of the amendment.[39]  In Holston's opening brief appellate

counsel conceded that Holston was in fact required to register as a sex offender.[40]  Holston

contends that this fact was neither pleaded nor proven and that his appellate counsel was

therefore ineffective for conceding the point.  Holston does not contend that he was not a

registered sex offender[41] or that his status as such made the ameliorative provisions of § 4019, as

amended, inapplicable, just that counsel should not have conceded the point.  According to

Holston this concession not only prejudiced him on direct appeal, i.e., the denial of his additional

---

[38] For the purposes of its analysis, this Court assumes that the amendments to Penal Code §§ 666 and 4019 at issue in this case applied retroactively to Holston.  While this Court agrees with Respondent that there is no constitutional requirement that the amendments be applied retroactively, the state courts did not deny Holston relief on this basis.  Instead, in deciding Holston's claims the state courts appear to have at least inferentially applied the amendments and determined that Holston was not entitled to relief.

[39] *Holston*, 2010 WL 3096157 at *1.

[40] Lodged Doc. No. 1 at 14-15.  Counsel made a similar concession in the Reply Brief. Lodged Doc. No. 3 at 5.

[41] Holston himself admitted that fact in his supplemental petition before the California Supreme Court in his first round of habeas petitions.  Lodged Doc. No. 11 at 2.  Furthermore, it is a matter of public record that Holston had in fact suffered a conviction a violation of Penal Code § 314[1] (indecent exposure), *People v. Holston*, C040455, 2003 WL 21499869 (Cal. Ct. App. June 30, 2003), a crime for which he was required to register as a sex offender.  Penal Code § 290(c).

presentence credits, but also was the basis for the denial of his subsequent claim in his state habeas proceedings that he was entitled to the benefit of the amendment to Penal Code § 666.

Holston raised his ineffective assistance of appellate counsel claim before the California Supreme Court in an "Application for Leave to File Supplemental Petition for Writ of Habeas Corpus" in his third round of state habeas petitions, while his petition for review of the Court of Appeal's denial of his petition to that court was pending.[42]   The California Supreme Court summarily denied Holston relief without opinion or citation to authority.

Under *Strickland*, to demonstrate ineffective assistance of counsel, Holston must show both that his counsel's performance was deficient and that the deficient performance prejudiced his defense.[43]   A deficient performance is one in which "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment."[44]   Holston must show that defense counsel's representation was not within the range of competence demanded of attorneys in criminal cases, and that there is a reasonable probability that, but for counsel's ineffectiveness, the result would have been different.[45]   An ineffective assistance of counsel claim should be denied if the petitioner fails to make a sufficient showing under either one of the *Strickland* prongs.[46]

---

[42] Lodged Doc. No. 23.

[43] *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

[44] *Id*.

[45] *Hill v. Lockhart,* 474 U.S. 52, 57 (1985).

[46] *See Strickland*, 466 U.S. at 697 (courts may consider either prong of the test first and need not address both prongs if the defendant fails on one).

14

*Strickland* and its progeny do not mandate that this Court act as a "Monday morning quarterback" in reviewing tactical decisions.[47]  Indeed, the Supreme Court admonished in *Strickland*:

> Judicial scrutiny of counsel's performance must be highly deferential.  It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.  A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.  Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.  There are countless ways to provide effective assistance in any given case.  Even the best criminal defense attorneys would not defend a particular client in the same way.[48]

In reviewing ineffective assistance of counsel claims in a federal habeas proceeding:

> The question "is not whether a federal court believes the state court's determination" under the *Strickland* standard "was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro, supra,* at 473, 127 S.Ct. 1933.  And, because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard.  See *Yarborough v. Alvarado,* 541 U.S. 652, 664, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004) ("[E]valuating whether a rule application was unreasonable requires considering the rule's specificity.  The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations").[49]

---

[47] *See Harris v. Reed*, 894 F.2d 871, 877 (7th Cir. 1990).

[48] 466 U.S. at 689 (internal citations and quotation marks omitted).

[49] *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009).

It is through this doubly deferential lens that a federal habeas court reviews *Strickland* claims under the § 2254(d)(1) standard.[50]

The Supreme Court, applying the "doubly deferential standard," has made clear that when adjudicating ineffective assistance of counsel claims in federal habeas proceedings, unlike the situation on direct review, focus is not on whether counsel's performance fell below the *Strickland* standard. Rather, the focus is on whether the state-court decision holding that counsel was not ineffective constituted an "*unreasonable* application of federal law[,] [which] is different from an *incorrect* application of federal law."[51]

> Under § 2254(d), a habeas court must determine what arguments or theories supported or, as here, could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court.[52]

Holston bears the burden of proving that counsel's appellate strategy was deficient. "[T]he defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound [appellate] strategy.'"[53] "[Holston] bears the heavy burden of proving that counsel's assistance was neither reasonable nor the result of sound [appellate] strategy."[54] "In determining whether the defendant received effective assistance of counsel, 'we will neither second-guess counsel's decisions, nor apply the fabled twenty-twenty vision of

---

[50] *Id.* (citing *Yarborough v. Gentry*, 540 U.S. 1, 5-6 (2003)).

[51] *Richter*, 131 S. Ct. at 785.

[52] *Id.* at 786.

[53] *Strickland*, 466 U.S. at 689.

[54] *Murtishaw v. Woodford*, 255 F.3d 926, 939 (9th Cir. 2001).

16

hindsight,' but rather, will defer to counsel's sound [appellate] strategy."[55]  "Because advocacy is

an art and not a science, and because the adversary system requires deference to counsel's

informed decisions, strategic choices must be respected in these circumstances if they are based

on professional judgment."[56]  The failure of appellate counsel to raise meritless or weak issues

does not constitute ineffective assistance of counsel.[57]  Here, it was incontrovertible that  Holston

was a registered sex offender,[58] a fact that deprived Holston of the benefits of the amendment to

§ 4019.  Indeed, appellate counsel in this case recognized the problem and, and "taking the bull

by the horns," argued that, notwithstanding his status as a registered sex offender, Holston was

nonetheless entitled to the benefit of the amendment; an argument that the Court of Appeal

rejected.

  Based on the record before it, this Court cannot say that the assumed decision of the

California Supreme Court that appellate counsel was not ineffective in choosing his appeal

strategy was "contrary to, or involved an unreasonable application of, clearly established Federal

law, as determined by the Supreme Court of the United States" or "was based on an unreasonable

determination of the facts in light of the evidence presented in the State court proceeding."[59]

---

  [55] *Id.* (quoting *Strickland*, 466 U.S. at 689).

  [56] *Strickland*, 466 U.S. at 681.

  [57] *See Jones v. Barnes*, 463 U.S. 745, 751-52 (1983) (holding that appellate counsel does not have an obligation to raise every nonfrivolous argument); *Miller v. Keeney*, 882 F.2d 1428, 1434-35 (9th Cir. 1989) (holding that appellate counsel's failure to raise a weak issue did not constitute ineffective counsel).

  [58] Contrary to Holston's argument, the fact that the indecent exposure conviction was "stricken" in accordance with the plea agreement, which affected the sentence that was agreed upon, did not eliminate that conviction or its validity.

  [59] 28 U.S.C. § 2254(d).

Nor, viewing the matter through the doubly-deferential lens of *Mirzayance-Richter*, can this Court find that the state court unreasonably applied the correct legal principle to the facts of the Holston's case within the scope of *Andrade-Williams-Landrigan-Richter*; i.e., the state court decision was not more than incorrect or erroneous, its application of clearly established federal law was not objectively unreasonable.  In particular, Holston has failed to overcome the strong presumption that appellate counsel's representation falls within the wide range of reasonable professional assistance.[60]  Holston is not entitled to relief under his first ground.

Grounds 2: *Ex Post Facto* Clause

With respect to his arguments *vis-a-vis* the retroactive application of the amendment to Penal Code § 666(b), he raised those claims for the first time before the California Supreme Court in a supplement to the petition,[61] which was summarily denied.  He then presented the claims in the Yuba County Superior Court in his second round of state habeas petitions.  The Yuba County Court rejected Holston's argument:  "The Court determines that, if [Holston] had been prosecuted after the amendment of Penal Code Section 666, his sentence would have been still been proper under current section 666(b)."[62]  The California Court of Appeal summarily denied relief, and the California Supreme Court denied relief citing *In re Miller*.[63]

---

[60] *See Mirazayance*, 556 U.S. at 127 ("Counsel also is not required to have a tactical reason—above and beyond a reasonable appraisal of a claim's dismal prospects for success—for recommending that a weak claim be dropped altogether.").

[61] Lodged Doc. No. 11.

[62] Lodged Doc. No. 15.

[63] 112 P.2d at 10.  A citation to *Miller* "signals that the Court is denying the petition for the same reasons  that it denied the previous one."  *Kim v. Villalobos*, 799 F.2d 1317, 1319 (9th Cir. 1986).

As amended, § 666(a) increased the number of prior convictions necessary to trigger that section from one to three.  In his second ground, Holston contends that application of the provision of § 666(b) in the amended section that excludes registered sex offenders from the change in § 666(a), effectively leaving them in the same position they were in prior to amendment, violates the *Ex Post Facto* Clause.  This Court disagrees.

"The bulk of our *ex post facto* jurisprudence has involved claims that a law has inflicted 'a greater punishment, than the law annexed to the crime, when committed.'"[64]  The fatal flaw in Holston's argument is that he received the exact same punishment under § 666(b) as he did under the law as it existed on the date he committed the offense to which he pleaded guilty, nothing more.  Because his punishment was not increased, his argument is utterly meritless.  Holston is not entitled to relief under his second ground.[65]

<u>Grounds 3 and 4:  Propriety of Finding Registered Sex Offender Status</u>

In his third and fourth grounds Holston contends that his status as a registered sex offender was not properly pleaded by the State (third ground) and was unsupported by the evidence (fourth ground).  This argument fails.  Holston raised this issue before the California Supreme Court in his supplement to his habeas petition in the first round of state habeas proceedings.  Contrary to Holston's arguments, he specifically admitted this fact in his supplement:  "Additionally, [Holston] contends that subdivision (b)(1) of amended [§] 666, may

---

[64] *Lynce v. Mathis*, 519 U.S. 433, 441 (1997) (quoting *Calder v. Bull*, 3 U.S. (3 Dall.) 386, 390 (1798)); *see Collins v. Youngblood*, 497 U.S. 37, 42 (1990) (citing *Beazell v. Ohio*, 269 U.S. 167, 169-70 (1925)).

[65] To the extent that Holston makes the same argument with respect to Penal Code § 4019, the result is the same.  This holds true for Holston's third and fourth grounds as well.

not be applied retrospectively to [Holston's] 2001 conviction for indecent exposure, that gave rise to his requirement to register as a sex offender.  To do so would violate Penal Code section 3, the California and United States Constitution, ex post facto clauses."[66]  Under California habeas procedure:  "A petition for a writ of habeas corpus is a collateral attack on a presumptively valid judgment.  Therefore, the petitioner bears a heavy burden initially to *plead* sufficient grounds for relief, and then later to *prove* them."[67]  "If no prima facie case for relief is stated, the court will summarily deny the petition."[68]  Because the very facts that Holston pleaded negated a *prima facie* case of entitlement to relief, this Court must assume that the California Supreme Court acted in accordance with its own law, albeit *sub silentio*."[69]  Holston's arguments before this Court not only lack merit, but are frivolous.[70]  Accordingly, Holston is not entitled to relief under either his third or fourth ground.

---

[66] Lodged Doc. No. 11 at 2.

[67] *In re Bacigalupo*, 283 P.3d 613, 626 (Cal. 2012) (internal quotation marks and citations omitted) (emphasis in the original)).

[68] *People v. Duvall*, 886 P.2d 1252, 1258 (Cal. 1995).

[69] *Richter*, 131 S. Ct. at 784-86.

[70] These facts likewise negate any possible federal due process argument under the Fourteenth Amendment, i.e., that Holston was not accorded the constitutionally required notice and opportunity to be heard.

## V.  CONCLUSION AND ORDER

Holston is not entitled to relief on any ground raised in his Petition.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Motion for Appointment of Counsel at **Docket No. 31** is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Application for Release on Own Recognizance Pending Determination on Petition for Writ of Habeas Corpus at **Docket No. 33** is **DENIED** as moot.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability.[71]  Any further request for a Certificate of Appealability must be addressed to the Court of Appeals.[72]

The Clerk of the Court is to enter judgment accordingly.

Dated:  December 13, 2012.

_____/s/ James K. Singleton, Jr._____
JAMES K. SINGLETON, JR.
United States District Judge

---

[71] 28 U.S.C. § 2253(c); *Banks v. Dretke,* 540 U.S. 668, 705 (2004) ("To obtain a certificate of appealability a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El*, 537 U.S. at 327)).

[72] *See* Fed. R. App. P. 22(b); Ninth Circuit R. 22-1.